UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TARI LEE BLAKESLEY,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | NO. C12-548-TSZ-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Tari Lee Blakesley appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings.

I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a thirty-six year old woman with a high school education. Administrative Record ("AR") at 55. She also took special education courses due to dyslexia and ADHD. AR at 72. Her past work experience includes employment as a cashier, janitor/dishwasher, retail stocker, and day-care worker. AR at 29,

REPORT AND RECOMMENDATION - 1

65, 86. Plaintiff was last gainfully employed as a line cook at the Old Country Buffet in 2004. AR at 54, 72.

On October 21, 2009, plaintiff filed a claim for SSI payments, alleging on onset date of March 1, 2006. AR at 165-67.[1] Plaintiff asserts that she is disabled due to post-traumatic stress disorder, irritable bowel syndrome, bipolar disorder, depression, anxiety and panic attacks, learning disorders, left hand impairment status post-surgery, back problems, hip and leg pain, asthma, vocal chord dysfunction, attention deficit disorder, dyslexia, and hearing loss. AR at 107.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 100, 107. Plaintiff requested a hearing, AR at 110, which took place on September 6, 2011. AR at 37-97. On November 25, 2011, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 16-36. After reviewing additional evidence, the Appeals Council denied plaintiff's request for review on February 24, 2012. AR at 1-7. On April 5, 2012, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] Although the record contains prior applications from 2004 for Disability Insurance Benefits and SSI, as well as a prior application for SSI from 2008, the other documents pertaining to those claims are not included in the record. In addition, during the hearing the ALJ stated that she was not reopening any prior claims. AR at 19.

REPORT AND RECOMMENDATION - 2

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Blakesley bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments,

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On November 25, 2011, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since October 14, 2009, the application date.

2. The claimant has the following severe impairments: Post Traumatic Stress Disorder, Leg Height Discrepancy, Depression, Learning Disorders, Status Post Left Wrist Surgery.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 416.967(b). She can frequently carry 10 pounds and occasionally carry 20 pounds. She has no sitting, standing or walking restrictions. The claimant can occasionally climb ladders, ropes or scaffolds, and occasionally crawl, but can frequently balance, stoop, kneel, crouch, and climb ramps and stairs. The claimant can frequently handle and finger with her left upper extremity, would have no other manipulative limitations, but must avoid concentrated exposures to hazards. The claimant has sufficient concentration to understand, remember, and carry out simple routine tasks of the kind found in unskilled work with a SVP up to two. The claimant has sufficient persistence and pace to work in a superficial capacity with the general public, which means she can work in the same room or vicinity of the public, but she does not have to respond to demands or requests other than to refer them to someone else or certain aisle, and is able to undertake a few workplace changes.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on XXXXX, 1975 and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[3]

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, from October 14, 2009, the date the application was filed.

AR at 21-31.

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

## VI.  ISSUES ON APPEAL

The principal issues on appeal are:

A. Did the ALJ err in evaluating the medical opinion evidence?

B. Did the ALJ err in evaluating plaintiff's credibility?

C. Did the ALJ err in finding that plaintiff's mental impairments did not meet or medically equal a listing?

D. Did the vocational expert's testimony provide substantial evidence to support the ALJ's finding at step five?

E. Did the Appeals Council err in finding that the additional evidence submitted by plaintiff would not change the ALJ's decision?

Dkt. 14 at 1; Dkt. 17 at 1.

## VII.  DISCUSSION

A. <u>The ALJ Erred in Evaluating the State Agency Physicians' Opinions</u>

   *1.  Legal Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than

REPORT AND RECOMMENDATION - 7

merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

        2.    *The ALJ Erred in Evaluating Dr. Hoskins' Opinion Regarding Plaintiff's Ability to Handle and Finger*

State agency physician Robert Hoskins, M.D., reviewed plaintiff's file on July 3, 2010, and affirmed the February 12, 2010 physical residual functional capacity assessment completed by Baron Wise. AR at 370, 572. Plaintiff contends that "although the ALJ said she gave

REPORT AND RECOMMENDATION - 8

significant weight to the opinions of Dr. Robert Hoskins, the ALJ omitted certain limitations in handling and fingering without providing legally sufficient, supported rationale." Dkt. 14 at 4 (citing AR at 27). Specifically, plaintiff fractured her wrist in 2002, requiring a surgical repair that included placement of a metal pin. The pin was subsequently removed in March 2010. AR at 316-19, 380-82. Based upon plaintiff's medical records, Dr. Hoskins opined that plaintiff was limited to "occasional handling and fingering" with her left hand, due to decreased range of motion, strength and pain. AR at 369.

The ALJ asserted in her written decision that Dr. Hoskins "is an expert in evaluating Social Security disability claims. His opinion is also consistent with the objective record." AR at 27. Although the ALJ generally credited Dr. Hoskins' findings, she disregarded his opinion about plaintiff's left hand limitations because his conclusion was "inconsistent with the record." AR at 27. The ALJ cited three examples. First, the ALJ noted that "prior to the recent [March 2010] surgery to remove a surgical pin, the record shows the claimant with only mild tenderness in the wrist with full range of motion, and full pronation and supination." AR at 27. Second, "nerve tests were unremarkable and showed no carpal tunnel syndrome." AR at 27. Third, "following her surgery, the claimant did not mention hand or wrist pain at subsequent medical visits." AR at 27. Contrary to Dr. Hoskin's opinion, the ALJ found that plaintiff could "frequently handle and finger with her left upper extremity, [and] would have no other manipulative limitations[.]" AR at 23.

Plaintiff asserts that the ALJ's reasons for rejecting Dr. Hoskins' opinion were not valid or supported by substantial evidence, as "the ALJ's summary of the medical evidence prior to the March 2010 surgery is not a full, fair and accurate summary." Dkt. 14 at 6. For example, plaintiff points out that the ALJ failed to acknowledge that the January 2010 examination of plaintiff's left wrist showed "significant pain with radial deviation and crepitance about the

REPORT AND RECOMMENDATION - 9

basilar thumb region." *Id.* at 7 (citing AR at 318).  In addition, the January 2010 records reflect that plaintiff had decreased sensation of the dorsum of the thumb and at the ulnar nerve, "weakened intrinsic function," plaintiff had a "positive CMC grind test," and a "moderately positive scaphoid shift test with compression elicited, also pain at the scaphoid." *Id*.  Moreover, imaging showed "prominence of the screw head about the carpal bones with evidence of an impingement of the screw head." *Id*. (citing AR at 319).  In fact, the reason for the planned surgery to remove the pin from plaintiff's wriest was due to the "irritable hardware." *Id.*

With respect to the ALJ's second reason for disregarding Dr. Hoskins' opinion, plaintiff contends that the plaintiff has not alleged that her pain and limitations are the result of a nerve problem or carpal tunnel syndrome, but the result of fracturing her wrist, having a surgical pin placed in it, with the pain and limitation increasing and ultimately leading to the removal of the surgical pin in 2010.  *Id*. (citing AR at 316-19).  Plaintiff further asserts that contrary to the ALJ's assertion that plaintiff did not complain of wrist problems in her follow up appointments after the surgery, in plaintiff's April 5, 2010 examination plaintiff complained that the hand was red and swollen.  *Id*. at 8 (citing AR at 441).

Finally, plaintiff asserts that the ALJ's errors were harmful because "the VE's testimony was that a claimant with the handling and fingering limitations opined by Dr. Hoskins would be unable to perform the work the VE testified to at step 5." *Id.* at 5 (citing AR at 93).  The VE testified that plaintiff could perform work as a folding machine operator (DOT 208.685-014) and stuffer (DOT 731.685.014).  AR at 88-89.  The VE testified that the fingering requirement was occasional for the stuffer job, AR at 89, but the folding machine operator job requires frequent fingering.  AR at 88.  In addition, the VE testified that both of these jobs require the worker to handle objects frequently, AR at 88, and if the hypothetical

REPORT AND RECOMMENDATION - 10

1  was limited to occasional handling and fingering, plaintiff could not perform either job.  AR at
2  89.

3  The Commissioner responds that "although Dr. Hoskins indicated that Plaintiff could
4  only occasionally handle and finger with her wrist, the record shows significant benign
5  findings that undermine this opinion."  Dkt. 17 at 4 (citing AR at 27).  The Commissioner then
6  points to the findings of several other physicians in the record, establishing that "[b]y February
7  2010, plaintiff's strength was only mildly reduced in her upper extremities . . . she had range of
8  motion in her upper extremities that was within functional limitations."  *Id*. at 5 (citing AR at
9  447).  After the screw was removed on March 22, 2010, the Commissioner asserts that
10 "plaintiff's only subsequent issue related to her wrist was less than three weeks after her
11 surgery when she complained that her wrist was red and swollen after her child hit it.  She had
12 no further wrist complaints.  These factors weigh against Dr. Hoskins' limitations on Plaintiff's
13 left upper extremity."  *Id*. (citing AR at 441).

14 The Court agrees with the plaintiff that the ALJ's three reasons for disregarding Dr.
15 Hoskin's opinion in this case were not specific, legitimate, or supported by substantial
16 evidence in the record.  Specifically, although the ALJ is correct that plaintiff was found to
17 have "full pronation and suspiration" and unremarkable nerve studies, the ALJ neglects to
18 mention the other findings in the same medical records suggesting that plaintiff was continuing
19 to experience significant pain and was, in fact, "elect[ing] hardware removal in an attempt to
20 alleviate her radial symptoms" due to her "healed scaphoid with irritable hardware."  AR at
21 319.  Although it is the duty of the ALJ to resolve inconsistencies in the record, an ALJ is
22 prohibited from cherry picking the evidence by only accepting the portions of medical opinions
23 supportive of the ALJ's conclusion, while ignoring any evidence in those same opinions
24 dictating an opposite conclusion.  AR at 27.  *See, e.g., Gallant v. Heckler,* 753 F.2d 1450,

REPORT AND RECOMMENDATION - 11

1455–56 (9th Cir. 1984) (ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competence evidence in the record that suggests an opposite result.") (cited source omitted).

In addition, the ALJ's observation that plaintiff was not suffering from carpal tunnel syndrome is inapposite. Plaintiff has not alleged that the pain and limitations in her left wrist resulted from nerve problems or carpel tunnel syndrome. Finally, the ALJ's finding that "following her surgery, the claimant did not mention hand or wrist pain at subsequent medical visits" is inaccurate. AR at 27. As mentioned above, plaintiff reported "constant" pain in her left wrist on April 5, 2010, after "her baby hit it very hard and it became more swollen and red." AR at 441. Although the Commissioner may believe that this complaint about continued pain in her wrist should be given little weight, because "her baby hit it," this was not a reason given by the ALJ. The ALJ simply asserted that plaintiff never mentioned pain in her wriest following her March 2010 surgery, and this statement is not supported by substantial evidence.

Accordingly, the ALJ erred in evaluating Dr. Hoskins' opinion regarding plaintiff's ability to handle and finger. Furthermore, this error was not harmless, because the VE testified that a claimant with the handling and fingering limitations assessed by Dr. Hoskins would be unable to perform the jobs identified by the VE at step five. AR at 88-89. Because the ALJ erred in evaluating the medical opinion evidence, this case must be remanded for further administrative proceedings. On remand, the ALJ should reconsider Dr. Hoskins' opinion regarding plaintiff's ability to handle and finger. If the ALJ declines to accept Dr. Hoskins' opinion, the ALJ shall provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Hoskins' conclusions.

B.    Dr. Hoskins' Opinion Regarding Plaintiff's Hearing

Plaintiff further contends that the ALJ erred by rejecting Dr. Hoskins' July 3, 2010 opinion that although plaintiff was able to maintain a normal conversation on the telephone, "plaintiff has moderate hearing loss" and should "avoid concentrated exposure to noise" in a workplace. Dkt. 14 at 8 (citing AR at 370, 572). The ALJ says she rejected "Dr. Hoskins' conclusion the claimant has limited hearing" because (1) Dr. Hoskins noted that plaintiff was able to maintain a normal phone conversation, (2) there was a normal hearing test in 2005, (3) there were inconsistent findings and numerous false positives during hearing tests in 2009, and (4) plaintiff had "no difficulty hearing questions and testifying without a hearing aid." AR at 27. Plaintiff claims that these reasons are not specific and legitimate, as "Dr. Hoskins did not opine that Plaintiff had a limitation in working in a job that involved talking on the telephone, or having face to face conversations in a quiet room such as a court room or hearing room." *Id*. (citing AR at 370). Plaintiff points to several other physicians in the record whose opinions, plaintiff claims, "provide a legitimate basis for Dr. Hoskins' opinions that Plaintiff should only perform work that does not involve a noisy environment." *Id*. at 10 (citing AR at 649, 650, 654).

The Commissioner responds that "although Dr. Hoskins' review of the record indicated that Plaintiff was able to maintain normal conversations on the phone, he still found that she needed to avoid concentrated exposure to noise. However, hearing tests by Joost L. Knops, M.D., from December 2005 showed essentially normal hearing bilaterally." Dkt. 17 at 5 (citing AR at 370, 653). In addition, the Commissioner notes that Dr. Knops' hearing tests in December 2009, which included numerous false positives, show that "even accepting that Plaintiff's hearing loss in her left ear was mild to moderate, hearing in her right ear was normal to borderline normal." *Id*. at 5-6 (citing AR at 652). Finally, the Commissioner contends that

REPORT AND RECOMMENDATION - 13

even if the ALJ erred by rejecting "this portion of Dr. Hoskins's opinion, this error would be harmless. The ALJ noted in her decision at step five that, even if Plaintiff were limited to work areas with no more than a moderate noise level, the jobs about which the vocational expert testified would not be precluded." *Id*. (citing AR at 30).

The Court agrees with plaintiff that the ALJ's reasons for rejecting Dr. Hoskins' opinion that plaintiff has "moderate hearing loss" and should "avoid concentrated exposure to noise" in the workplace are not specific and legitimate. AR at 27. Specifically, although plaintiff's hearing tests conducted by Dr. Knops in 2005 were "nearly normal," Dr. Knops tested plaintiff's "hearing loss" again in December 2009 and found that "she continues to struggle with a left greater than right hearing loss. She feels as if it has been getting worse. She struggles with certain conversations." AR at 651. Following plaintiff's audiometric testing in 2009, "left greater than right hearing loss is noted . . . the patient apparently does have some degree of longstanding hearing loss . . . We would recommend consideration of hearing aids[.]" AR at 651. Although Dr. Knops noted that his 2009 testing included "some inconsistent findings' and "false positives before honing in on the current test," Dr. Knops ultimately concluded that plaintiff "does have some degree of longstanding hearing loss," and would benefit from the assistance of hearing aids, as well as further testing "to really pin down where exactly her hearing levels are." AR at 651.

In addition, Dr. Knops conducted additional audiometric testing on February 25, 2010, and noted that "our audiometric test shows that her right ear has about a 25% hearing loss and her left ear has about a 45-50% hearing loss. Our recommendation is hearing aids." AR at 650. Dr. Knops further opined that "I believe with proper hearing aid fitting the patient should be able to perform most duties in most work environments. The patient may have difficulties in particularly noisy environments and/or environments with a significant amount of

REPORT AND RECOMMENDATION - 14

background noise." AR at 650. Dr. Knops further opined that "[i]n very quiet environments the patient may find that she still is able to function reasonably well." AR at 650. Similarly, Gregory R. Hess, Au.D. found on March 18, 2010, that plaintiff's "bilateral sensoineural hearing loss with accompanying loss in speech sensitivity" made plaintiff "a good candidate for trial of mild gain binaural hearing aids." AR at 649.

Although the ALJ referenced Dr. Knops' hearing tests from 2005 and 2009 (upon which Mr. Wise's original February 12, 2012 evaluation was based), Dr. Hoskins presumably also reviewed Dr. Knops' follow up test results conducted on February 25, 2010 before affirming Mr. Wise's opinion on July 3, 2010. AR at 572. In addition, Dr. Hoskins also would have reviewed the results of the March 2010 hearing test conducted by Gregory Hess, Au.D. AR at 649. However, in rejecting Dr. Hoskins' opinion, the ALJ did not acknowledge any of the 2010 test results. AR at 27.

Especially in light of the 2010 findings of Dr. Knops and Mr. Hess, upon which Dr. Hoskins' opinion appears to have been based in part, the ALJ has not provided specific and legitimate reasons for rejecting Dr. Hoskins' conclusion that plaintiff "has moderate hearing loss" and therefore should "avoid concentrated exposure" to noise. AR at 370.[4] Moreover, the Court notes that even if the plaintiff was able to hear and understand the ALJ during the administrative hearing without hearing aids, plaintiff may still have problems hearing in certain work environments.

Finally, the Commissioner has not demonstrated that the ALJ's error in evaluating this aspect of Dr. Hoskins' opinion was harmless. The ALJ did not discuss in her written decision whether the folding machine operator and stuffer jobs identified by the VE, which both involve

---

[4] The Commissioner failed to discuss, or even cite to, the 2010 opinions of Dr. Knops and Mr. Hess in his brief. Dkt. 17.

REPORT AND RECOMMENDATION - 15

"moderate noise," are consistent with Dr. Hoskins' finding that plaintiff should "avoid concentrated exposure" to noise. AR at 30. Accordingly, on remand, the ALJ shall also reconsider Dr. Hoskins' opinion regarding plaintiff's hearing loss, and clarify whether plaintiff is capable of performing jobs involving moderate noise level, or whether such jobs necessarily involve "concentrated exposure to noise."

        C.        <u>Evidence Pertaining to Plaintiff's Mental Health Treatment</u>

Plaintiff contends that the ALJ erred by failing to adopt the state agency doctors' opinion that plaintiff was limited to working in a job "with familiar coworkers" as well as an "understanding supervisor." AR at 340. Specifically, Matthew Comrie, Psy.D., prepared a mental RFC form in February 2010, AR at 338-41, which provides that plaintiff "is capable of working with familiar coworkers, an understanding supervisor but requires limited contact with general public due [to] anxiety and reactivity from PTSD." AR at 340. Dr. Comrie's assessment was affirmed by Bruce Eather, Ph.D., in June 2010. AR at 571. The ALJ asserted that she gave "substantial weight" to Dr. Eather's opinion, and did not indicated that she rejected any portion of his opinion. AR at 28 (citing AR at 338-41, 571). However, although the ALJ's RFC assessment limits plaintiff to superficial contact with the public, it does not include any limitations regarding co-workers or supervision. AR at 23-24. As plaintiff also failed to include these limitations in her hypothetical to the VE, plaintiff asserts that the ALJ's error was not harmless.

The Commissioner responds that the state agency doctors' language regarding coworkers and supervisors was "descriptive rather [than] limiting," and therefore did not need to be included in the ALJ's RFC assessment. Dkt. 17 at 7. The Commissioner further asserts that these limitations are "reflected in other limitations assessed by the ALJ: work where Plaintiff was only required to perform simple, routine tasks and a workplace that had few

REPORT AND RECOMMENDATION - 16

changes. Accordingly, the ALJ's [RFC] finding adequately reflects the opinion of Dr. Eather." *Id*. at 8 (citing AR at 23).

The Commissioner's argument that these state agency doctors' opinions were already accounted for in the ALJ's RFC assessment, which includes no limitations with respect to coworkers and supervisors, is unpersuasive. The Commissioner has cited to no authority, and the Court is aware of none, holding that a limitation to "simple, repetitive tasks" with few workplace changes automatically encompasses limitations to working with "familiar workers" as well as an "understanding supervisor."

In light of the ALJ's error in evaluating the state agency doctors' opinions regarding plaintiff's mental RFC, as well as the ALJ's errors evaluating the medical evidence discussed above, the ALJ is directed to reevaluate all of the medical evidence of record on remand. After reconsidering all of the medical evidence relating to plaintiff's impairments, the ALJ should reevaluate plaintiff's RFC, and proceed through the sequential evaluation process.[5]

### D. The ALJ's Errors in Evaluating the Medical Evidence Require Reassessment of Plaintiff's Credibility on Remand

The ALJ found plaintiff to be less than credible because (1) her alleged symptoms of disability were inconsistent with the objective medical evidence, (2) her testimony at the hearing contained numerous inconsistent statements, and (3) her alleged symptoms were inconsistent with her daily activities. AR at 24-27.

---

[5] In light of the fact that the ALJ must reevaluate all of the medical evidence on remand, it is unnecessary to determine whether the ALJ also erred in evaluating other physicians' diagnosis of mental disorders, as alleged by the plaintiff. Dkt. 14 at 14-15. However, on remand, the ALJ is directed to apply the "special technique" at steps two and three, and discuss all colorable mental impairments. *See* 20 C.F.R. § 404.1520a; *Selassie v. Barnhart*, 203 Fed.Appx. 174, 176 (9th Cir. 2006). For example, the ALJ should discuss whether Dr. Rubens' diagnosis of psychosis, and Dr. Bartlett's diagnosis of a pain disorder and personality disorder, constitute colorable mental impairments, and if so, evaluate them in compliance with the applicable regulations.

REPORT AND RECOMMENDATION - 17

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Although most of the reasons given by the ALJ to discount plaintiff's credibility are supported by substantial evidence in the record, several of the ALJ's reasons for finding plaintiff's allegations unreliable relate directly to the medical evidence that, as discussed

above, the ALJ erred in evaluating. For example, the ALJ cites to select records relating to plaintiff's left wrist as "objective medical evidence . . . [that] is inconsistent with her allegations." AR at 24. Thus, the Court cannot say with confidence that substantial evidence supports the ALJ's conclusion as to plaintiff's credibility. On remand, the ALJ should reassess plaintiff's credibility, including the ALJ's finding that plaintiff's claims are inconsistent with the objective medical evidence in the record.

E. The Court Need Not Evaluate Plaintiff's Remaining Assignments of Error

As discussed above, the Court has found that the ALJ erred in evaluating the medical evidence, and that these errors also undermined the ALJ's credibility assessment. Following remand, the ALJ should reevaluate the record anew, including the medical evidence and plaintiff's credibility, determine plaintiff's RFC, and obtain vocational expert testimony at step five, if appropriate. Because this case must be remanded based upon the issues discussed above, it is unnecessary for the Court to reach plaintiff's other assignments of error.

VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 7th day of December, 2012.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge